IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ARKANSAS GAME & FISH COMMISSION, Plaintiff, | ) | No. 05-381 L |
| v. | ) | Judge Charles F. Lettow |
| UNITED STATES OF AMERICA, Defendant. | ) | |

**DEFENDANT'S MOTION TO COMPEL TESTING AND MEASURING ON THE DAVE DONALDSON-BLACK RIVER WILDLIFE MANAGEMENT AREA AND REQUEST FOR EXPEDITED REVIEW**

Pursuant to Rule 37 of the Rules of the United States Court of Federal Claims ("RCFC"), Defendant, the United States of America, through its undersigned counsel, hereby moves to compel Plaintiff to permit Defendant to install water-level gages on the Dave Donaldson-Black River Wildlife Management Area ("WMA"), allowing Defendant's experts to test and measure certain conditions on the WMA. Because Plaintiff will be initiating winter flooding on the WMA in the immediate future, or perhaps has already initiated this flooding, Defendant requests that Plaintiff be compelled to allow Defendant's experts to install the water-level gages as soon as possible, but not later than October 27, 2006. Due to the sensitive timing of this request, Defendant seeks expedited review of this motion.

**FACTS**

Defendant's experts wish to install approximately seven to ten water-level gages on the WMA to test and measure the property, pursuant to Rule 34 of the RCFC. On September 22, 2006, Defendant requested by telephone that Plaintiff permit Defendant's experts to install seven to ten water-level gages on the WMA. Defendant repeated this request in writing in a letter

dated September 25, 2006. Ex. A. In a letter dated October 5, 2006, Plaintiff refused to allow Defendant's experts to install the water-level gages, contending that the installation of water-level gages constitutes fact discovery and "fact discovery has ended."[1/] Ex. B. On October 11, 2006, Defendant renewed its request by serving a Rule 34 Notice on Plaintiff. Ex. C. According to the Notice, "[i]f Defendant does not receive a response from Plaintiff by [Friday, October 13, 2006], then Defendant will assume that Plaintiff's previous response, in its letter dated October 5, 2006, stands." Id. Plaintiff did not provide any additional response by the requested date. Defendant certifies that it has conferred in good faith with Plaintiff in an effort to gain access to the WMA so that Defendant's experts may install water-level gages. RCFC 37(a)(2)(B).

Defendant's experts seek to install water-level gages on the WMA to test and measure conditions during winter flooding, which Plaintiff initiates each year. This annual flooding occurs from October until the spring. The experts plan to remove the water-level gages once the winter flooding on the WMA subsides, which could be as early as February 2007, but will not be later than April 2007.

Contrary to Plaintiff's assertions, see Ex. B, Defendant's experts were not in a position to install the water-level gages during the period of winter flooding from October 2005 to spring 2006. Defendant's experts first visited the WMA at the end of October 2005. At that time, the experts had only recently been retained, and were not aware that testing and measuring on the WMA would even be necessary. The water-level gages yield useful results when they are installed at or near the beginning of the winter flooding season. By the end of 2005 Defendant's experts had not determined conclusively that this testing would be beneficial. Accordingly, the

---

[1/] As Defendant explains infra, this is not fact discovery, but is expert discovery.

current flooding season is the first real opportunity for Defendant's experts to conduct the measurements and tests on the WMA.

**ARGUMENT**

Defendant's request to install water-level gages on the WMA falls squarely within the scope of expert discovery. Defendant is neither seeking facts from Plaintiff nor requesting Plaintiff to install (or take part in the installation of) water-level gages on the WMA. Plaintiff's role is limited to simply allowing Defendant's experts access to the WMA.

It is well-settled that "[t]rial courts enjoy broad discretion in controlling discovery." Shell Petroleum, Inc. v. United States, 46 Fed. Cl. 583, 585 (2000) (citing Dorf & Stanton Communications, Inc. v. Molson Breweries, 100 F.3d 919, 922-23 (Fed. Cir. 1996) (applying Second Circuit law), and Western Elec. Co. v. Piezo Tech., Inc., 860 F.2d 428, 430 (Fed. Cir. 1988)). Moreover, a trial court "has discretion to decide whether discovery is 'fact' discovery or 'expert' discovery." Id.

Few cases parse the fact discovery/expert discovery dichotomy. In Shell Petroleum, Inc. v. United States, 46 Fed. Cl. 583 (2000), the court determined that plaintiff's requests for admissions, interrogatories, and requests for production, which were served during expert discovery, constituted "fact discovery" as opposed to "expert discovery." Id. at 585-86. Although recognizing that it was "not aware of any precedent discussing whether discovery is part of 'fact discovery' or 'expert discovery,'' the court determined that it was within its discretion to determine "whether discovery is 'fact' discovery or 'expert' discovery." Id. at 585. The Shell Petroleum court acknowledged that plaintiff was untimely seeking defendant's "agreement on a particular point" through requests for admissions, reinforced by interrogatories

and requests for production to determine (if the requests for admission were denied) why defendant disagreed with the statement for which admission was sought. Id. at 584. More specifically, plaintiff requested that defendant identify "the quantity of oil produced from certain [credit] wells," "the identity of 'credit wells,'" "the amount of oil sold to third parties," and "the BTU adjustment factor[, a scientific measurement,] for the oil produced from certain reservoirs." Id. at 585-86. Although the court determined that these four categories of requests constituted "fact discovery," it concluded that the requests were useful and would thereby "entertain a motion for leave to file discovery out of time." Id. at 586.

Unlike the discovery that plaintiff requested in Shell Petroleum, Defendant in this case is not seeking responses to interrogatories, the production of documents, or requests for admissions. Defendant's experts simply request that they be permitted to install water-level gages on Plaintiff's property pursuant to Rule 34 of the RCFC. See Cook v. Rockwell Int'l Corp., 147 F.R.D. 237, 242, 244 (D. Colo. 1993) (referring to an "Expert Discovery Order" that provided plaintiff, in particular, with "two years to obtain their own soil, air and water tests as well as the determination of any lost market value of property," and expert reports). Defendant is not soliciting information from any party, and is not seeking any assistance from Plaintiff or seeking to use any of Plaintiff's resources to install the water gages and carry out the necessary testing.

Plaintiff does not (and cannot) argue that Defendant's request is irrelevant or immaterial to the merits of this case. Its only objection to the installation of water-level gages on the WMA is that Defendant's request is untimely because the period of time designated for fact discovery has expired. Ex. B. While Plaintiff purports to be concerned that this additional discovery will

substantially postpone the resolution of this case, see Ex. B, it is telling that Plaintiff has at no time asked this Court to set a deadline for expert discovery or impose any constraints on the scope of such discovery.[2/] Plaintiff's current objections do little more than seek to impose an arbitrary limit on expert discovery.

Furthermore, certain experts retained by Plaintiff have been monitoring and analyzing the WMA since November 2000.[3/] Ex. F at p. AGFC1576. Having already monitored the WMA for six years, Plaintiff cannot credibly argue that the discovery period in this case has already exceeded reasonable bounds. Indeed, Plaintiff's experts have been afforded an extraordinary amount of time – compared to the time afforded Defendant's experts – to conduct testing and measuring on the WMA.[4/] Against this backdrop, Defendant's request to install water-level gages for a period of three to six months is not unreasonable.

**CONCLUSION**

For these reasons, Defendant respectfully requests the Court to order Plaintiff to permit Defendant's experts to install approximately seven to ten water-level gages on the WMA as soon as possible, but not later than Friday, October 27, 2006.

---

[2/]An expert discovery schedule has not yet been set in this case. In their Joint Preliminary Status Report, the parties did not suggest an expert discovery schedule. Ex. D. Moreover, the Court did not issue an expert discovery schedule in its initial scheduling order. Ex. E.

[3/]This monitoring, however, does not appear to have included the testing and measuring that Defendant's experts seek to conduct using the proposed water-level gages.

[4/] Plaintiff has provided Defendant with some findings issued by some of its experts. Defendant has not been given all the background information that supports the findings of these Plaintiff's experts. Defendant has not moved to compel the production of this background information, however, because an expert discovery schedule has yet to be established.

Dated: October 17, 2006

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

s/ HelenAnne Listerman
HELENANNE LISTERMAN
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044
(202) 305-0239

Of Counsel:

Jennifer Dalton
United States Corps of Engineers
Little Rock District
Office of Counsel