**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**ARKANSAS GAME & FISH COMMISSION** **PLAINTIFF**

**v.** **NO. 05-381L**
**JUDGE CHARLES F. LETTOW**

**THE UNITED STATES** **DEFENDANT**

**RESPONSE TO DEFENDANT'S MOTION TO COMPEL TESTING AND MEASURING ON THE DAVE DONALDSON-BLACK RIVER WILDLIFE MANAGEMENT AREA AND REQUEST FOR EXPEDITED REVIEW**

Comes now the Arkansas Game & Fish Commission ("AGFC" or "the Commission"), through its undersigned attorneys, and submits this Response to Defendant's Motion to Compel Testing and Measuring on the Dave Donaldson-Black River Wildlife Management Area and Request for Expedited Review.

I. Factual Background on Fact Discovery

(a) Fact Discovery Deadlines

The parties filed a Joint Preliminary Status Report in July of 2005. In that report, the parties agreed to a tentative close of fact discovery of April 30, 2006. See Report filed July 8, 2005. By Order of September 21, 2005, the Court accepted the parties' proposed discovery plan as reasonable and directed that factual discovery be completed by May 1, 2006 and a joint status report submitted on or before May 31, 2006. Prior to the May 1, 2006, fact discovery deadline, the parties conferred and agreed that fact discovery could not be completed by the deadline. Therefore, on April 24, 2006, the parties jointly filed a request for extension of the discovery deadline to September 1, 2006, and proposed filing of a joint status report on or before September 29, 2006. See Joint Motion for Extension of Fact Discovery filed April 24, 2006.

By Order of April 26, 2006, the Court extended the factual discovery deadline as requested and ordered the parties to submit a "further joint status report on or before September 29, 2006, proposing a plan and schedule for further proceedings in the case."

On July 31, 2006, the parties again moved jointly for enlargement of fact discovery up to and including October 2, 2006. See Joint Motion for Enlargement of Fact Discovery filed July 31, 2006. On August 2, 2006, the Court entered an Order extending fact discovery until October 2, 2006, and directed the parties to submit a joint status report on or before October 20, 2006, proposing a plan and schedule for further proceedings in the case.

Defendant filed a Motion for Enlargement of Fact Discovery on September 27, 2006, requesting an unlimited 32-day enlargement of fact discovery so that previously noticed or subpoenaed fact witnesses, who were unavailable at the noticed dates and times due to scheduling conflicts, could be deposed. Plaintiff filed a Response to Defendant's Motion for Enlargement of Fact Discovery on October 5, 2006, agreeing to a limited number of previously noticed or subpoenaed depositions but opposing unlimited fact discovery. Defendant filed a Reply in Support of its Motion for Enlargement of Fact Discovery on October 16, 2006, providing that it no longer requested unlimited fact discovery at that time. Given Defendant's withdrawal of the portion of its Motion to which Plaintiff objected, there is no contested issue remaining which would require a ruling from the Court.

(b) <u>Defendant's Motion to Compel Testing and Measuring on the Dave Donaldson-Black River Wildlife Management Area and Request for Expedited Review</u>

On September 27, 2006, Defendant filed a Motion to Compel Testing and Measuring on the Dave Donaldson-Black River Wildlife Management Area and Request for Expedited Review (the "Motion"). On September 22, 2006, Defendant requested permission by telephone to install water-level gauges on the WMA. Plaintiff requested that Defendant put this request in writing

and Defendant did so by letter of Monday, September 25, 2006. See Exhibit A to Defendant's Motion. The parties were scheduled to and did attend depositions noticed by Defendant in Little Rock on September 26 - 27, 2006. Counsel for Plaintiff and Defendant discussed this matter in person while attending depositions in Little Rock and, at that time, Plaintiff's counsel expressed a belief that the installation of the gauges and gathering of information related to those gauges constitutes fact discovery. Defendant conducted research on the issue and based on that research responded by letter of October 5, 2006, that the installation of gauges on the Dave Donaldson Black River Wildlife Management Area (WMA) does constitute fact discovery, fact discovery has ended, and the request to conduct this discovery would cause unnecessary delay in the case. See Exhibit B to Defendant's Motion.

On October 11, 2006, Defendant served Plaintiff with a Rule 34 Request to Install Water-Level Gauges on the Dave Donaldson-Black River WMA. See Exhibit C to Defendant's Motion. Though Rule 34(b) of the Rules of the Court of Federal Claims allows thirty days for a response to a Rule 34 request, Defendant requested that Plaintiff respond by October 13, 2006, two days later. In its Request, Defendant stated "[i]f Defendant does not receive a response from Plaintiff by that date, then Defendant will assume that Plaintiff's previous response, in its letter dated October 5, 2006, stands." Exhibit C, p. 2. Plaintiff did not respond within the short time frame requested. The pending Motion to Compel followed on October 17, 2006.

II. Law and Analysis

A. Testing and Measuring Water Gauges is Fact Discovery and Fact Discovery has Closed

In its Motion, Defendant states that its "experts wish to install approximately seven to ten water-level gages on the WMA to test and measure the property." Defendant's request falls within the scope of fact discovery and fact discovery ended on October 2, 2006.

Defendant is correct that the Court enjoys discretion in "controlling discovery" and "classifying evidence as 'fact' or 'opinion'". *Shell Petroleum, Inc. v. United States*, 46 Fed. Cl. 583, 585 quoting in part McCormick on Evidence, § 11 (4th Ed. 1992). In *Shell Petroleum*, "[t]he primary issue to be resolved is whether the Plaintiff's discovery requests sought factual information or information relating to experts." *Shell Petroleum*, 46 Fed. Cl. at 584. In an initial scheduling order, the court in *Shell Petroleum* differentiated between fact discovery and expert discovery. "The purpose of this distinction was to allow the parties to investigate, completely, all 'facts' before the parties proceeded to expert discovery. During expert discovery, the parties would have an opportunity to learn about the experts' opinions, which the Court perceived as different from the facts of the case. If the experts know (or should know) all the facts before setting out their opinions in expert reports, then the opinions should not change because of the discovery of 'new' facts." *Id.* at 584. The court analyzed the four different topics covered by the discovery requests and determined that all are "'fact areas'". *Id.* at 585.

The first group of discovery requests sought in *Shell Petroleum* focused on the "quantity of oil produced from certain wells." The court determined that "quantity is a 'fact' Although the United States has retained an outside person to review documents produced by Shell that substantiate Shell's claim, this participation does not change a 'fact' to an 'opinion'". *Id.* at 585-

86. The second topic of discovery is the identity of credit wells. The court found that this is a question of fact, not a question of opinion. *Id.* at 586. The third area of discovery had to do with the amount of oil sold to third parties, and the Court ruled that this was a factual question. Finally, the fourth area of discovery related to a "BTU adjustment factor for the oil produced from certain reservoirs." *Id.* at 586. The court held that although the BTU adjustment factor is a scientific unit of measurement, the BTU adjustment factor is a fact because it can be measured objectively. *Id.* The Court denied Shell's motion to compel finding Shell's discovery requests, served after the time for fact discovery expired, "are requests that seek 'factual'- not 'opinion' and not 'expert' – information." *Id.* at 586.

Similarly, Defendant's request in the present case to install water gauges is for the purpose of seeking *factual*, not opinion information. Defendant is attempting to gather information upon which its experts may opine. The formulation of opinions based on the factual information gathered during fact discovery and the disclosure of those opinions is the substance of expert discovery. The time period for assimilating factual information under the control of the opposing party ended at the close of fact discovery, October 2, 2006. Although Defendant claims it "it is neither seeking facts from Plaintiff nor requesting Plaintiff to install (or take part in the installation of) water-level gages on the WMA", it is seeking entry upon land "in the possession or control of" the AGFC. See Court of Fed. Claims R. 34(a)(2).

This lawsuit was filed on March 18, 2005. Defendant has never made a request to install gauges on the WMA before September 22, 2006, 10 calendar days before the close of fact discovery. This is the second winter flooding season that has occurred during the life of this litigation. Defendant claims that its experts first visited the WMA at the end of October 2005, and, "at that time, the experts had only recently been retained, and were not aware that testing

and measuring on the WMA would even be necessary." Defendant's Motion p. 2. It is not the fault of Plaintiff that Defendant waited almost seven months before it retained expert witnesses. The United States certainly had the resources at its disposal to evaluate cases and determine that expert witnesses were necessary in this case.

Upon the filing of the complaint in March of 2005, the United States knew this case involved, in part, timber located within areas that are flooded to provide wintering waterfowl habitat. By August of 2005, both parties had propounded initial discovery requests to the opposing party. In its initial discovery request of August 31, 2005, Defendant asked Plaintiff to "describe all standard procedures implemented by you for flooding the WMA from 1957 to the present, including identifying the specific area(s) of the WMA that are flooded, the purpose(s) of the flooding, and the duration of the flooding." Defendant's First Set of Interrogatories and Document Requests, No. 6 attached hereto as Exhibit 1. Plaintiff responded to these discovery requests by October 14, 2005. See Plaintiff's Response to First Set of Interrogatories and document Requests attached hereto as Exhibit 2. Defendant requested information regarding when the AGFC "flooded parts of the WMA for duck hunting or any other reason . . . ." See Exhibit 1, Interrogatory No. 11. Clearly, in August of 2005, Defendant knew of the AGFC's winter flooding. Defendant could have requested installation of the gauges in August of 2005 but did not do so.

Defendant claims it is playing catch-up with Plaintiff's experts who have been "monitoring and analyzing the WMA since November 2000." Defendant's Motion p. 5. While Plaintiff takes issue with Defendant's characterization of continuous monitoring and analyzing since 2000, it is true that one of Plaintiff's experts, Kingwood Forestry Services, Inc., produced a Resource Evaluation and Damage Appraisal for AGFC in January 2001 and December 2001

(collectively "the Kingwood Reports"). It is also true, however, that the Kingwood reports were provided to persons in authority with the United States Army Corps of Engineers (COE) Little Rock District, including the District Engineer, practically upon receipt by AGFC.[2] The AGFC shared this information with the COE in opposition to the COE's Finding of No Significant Impact that had been issued with regard to an Environmental Assessment performed in the COE's attempt to permanently change the Clearwater Lake Water Control Project, Water Control Plan. The Kingwood Reports describe winter flooding activities on the AGFC WMA. See pages 2-10 of the January 2001 Kingwood Forestry Report attached hereto as Exhibit 3. Clearly, Defendant knew, or should have known, of the AGFC's winter flooding prior to the 2005 winter flooding season. Defendant could have requested installation of the gauges in 2005 but did not do so.

Finally, Defendant and its experts visited the site in October 26-28, 2005, again in February 2006 and then jointly with Plaintiff in July 2006. Defendant has had ample opportunity to request installation of the gauges but has waited until just before winter flooding was to begin to make this request. Defendant has created its own time-sensitive crisis by waiting until less than one-month prior to the time Plaintiff normally initiates winter-flooding to make this request. This is especially true given the fact that Rule 34 allows Plaintiff thirty days to serve a written response objecting to the request or stating that the request will be allowed.

Now, as the parties are preparing to exchange expert reports and schedule expert depositions, Defendant requests to collect factual information regarding winter flooding on the WMA. This information is factual and fact discovery has closed.

---

[2] Although this lawsuit is maintained against the United States, it is the actions of the United States Army Corps of Engineers, specifically, that Defendant alleges caused harm to Plaintiff. See Complaint filed March 18, 2005.

B. The Factual Information Defendant Seeks is Not Material to the Merits of this Case

In its Motion, Defendant states "Plaintiff does not (and cannot) argue that Defendant's request is irrelevant or immaterial to the merits of the case." Defendant's Motion p. 4. Plaintiff completely disagrees with this statement. This case is about timber damage and mortality caused to timber by extended growing season flooding during a period of years during the 1990s and into 2000. Plaintiff is at a loss to understand what relevant information can be achieved by collecting data on water levels on the WMA during winter flooding in 2006. Defendant makes absolutely no case for why the information is desirable but instead only makes conclusory statements that the information will "yield useful results". Plaintiff objects to the collection of this factual information outside of the fact discovery deadline especially given that Plaintiff has not justified the basis for the delay the collection will cause.

C. The Testing and Measuring Proposed will cause Undue Delay in this Case

Plaintiff also objects to the installation of water gauges on the WMA as it will cause undue delay in the progress of this litigation. Defendant indicated in its Motion that its experts intend to install the gauges "to test and measure conditions during winter flooding." Defendant's Motion p. 2. "The experts plan to remove the water-level gages once the winter flooding on the WMA subsides, which could be as early as February 2007, but will not be later than April 2007." *Id.* In the Joint Status Report filed on Friday, October 20, 2006, Defendant indicated the schedule it would propose if the Court allows the installation of water-level gauges on the WMA. In Defendant's schedule, Defendant's experts would not even be available for deposition until July 6, 2007, with dispositive motions being filed August 15, 2007. Under this proposal, it is unlikely a trial could be accommodated during the 2007 calendar year. Plaintiff, in the Joint Status Report filed on Friday, October 20, proposed that expert discovery close on March 31,

2007, and requested a trial date in the late summer or fall of 2007 after August 1, 2007. Clearly, the installation of gauges, gathering of data from those gauges, and analyzing of that data will delay the case unnecessarily.

Defendant expresses doubt of Plaintiff's concern for the postponement of the case and states that "it is telling that Plaintiff has at no time asked this Court to set a deadline for expert discovery or impose any constraints on the scope of such discovery." Defendant's Motion p. 5. The parties originally proposed a tentative close of fact discovery of April 30, 2006 both recognizing that some additional time might be needed. The parties thought it wise to request additional deadlines at the close of fact discovery, including deadlines for expert discovery, in the joint status report requested by the Court.

The parties have already invested almost eighteen months of work into this case. Defendant has expended incredible resources to prosecute this litigation. The undue delay caused by Defendant's belated request to obtain factual information will only prolong the case and raise the expenses of both parties.

For the reasons stated herein, Plaintiff requests that the Court deny Defendant's Motion to Compel Testing and Measuring on the Dave Donaldson-Black River Wildlife Management Area.

Date of Signing: October 23, 2006

Respectfully submitted

By: /s/ Julie D. Greathouse

PERKINS & TROTTER, PLLC
P. O. Box 251618
Little Rock, AR 72225-1618
501-603-9000 Phone /501-603-0556 Fax

Of Counsel

G. Alan Perkins
PERKINS & TROTTER, PLLC
Post Office Box 251618
Little Rock, AR 72225-1618
Telephone: (501) 603-9000
Telefax: (501) 603-0556

James F. Goodhart
ARKANSAS GAME & FISH COMMISSION
#2 Natural Resources Drive
Little Rock, AR 72205
Telephone: (501) 223-6327
Telefax: (501) 223-6463

*ATTORNEYS FOR PLAINTIFF*
ARKANSAS GAME & FISH COMMISSION

CERTIFICATE OF SERVICE

I certify that I have on this 23rd day of October 2006 served a copy of the foregoing document on the party hereto by electronic filing:

HelenAnne Listerman
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P. O. Box 663
Washington, DC 200044-0663

/s/ Julie D. Greathouse