IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ARKANSAS GAME & FISH COMMISSION, | ) | |
| Plaintiff, | ) | No. 05-381 L |
| | ) | |
| v. | ) | Judge Charles F. Lettow |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR**
**MODIFICATION OF FACT DISCOVERY SCHEDULE**

**MOTION**

Defendant, the United States of America, respectfully moves for a modification of the fact discovery schedule established by the Court on November 16, 2006. Defendant requests a relatively small modification to allow Defendant an opportunity to take tree increment core samples on the Dave Donaldson-Black River Wildlife Management Area ("WMA"). Although Defendant has been in discussions with Plaintiff since April 4, 2006 regarding the desired tree core sampling, flooding on the property has precluded this discovery from proceeding. Thus, for the reasons stated below, Defendant respectfully moves the Court to modify the fact discovery schedule to allow for Defendant's experts to take tree increment cores on the WMA once the high water levels on the site have receded and the experts can take the cores from solid ground, or at least until July 31, 2007.

## MEMORANDUM OF LAW

### I. BACKGROUND

On April 4, 2007, Defendant informed Plaintiff by telephone of its need to take tree increment cores on the WMA in May 2007. Defendant memorialized this request in a letter dated April 6, 2007. Ex. A. Due to Plaintiff's artificial flooding of the WMA during the fall and winter months, Wayne E. Williams, a forester working for the United States in this case, planned to take the tree increment cores in early May 2007, when, presumably, surface water would not be inundating the WMA. Ex. B (Declaration of Wayne E. Williams ("Williams Decl.") ¶¶ 3, 8).

On April 24, 2007, Dr. Wade Nutter, a hydrologist working for the United States in this case, visited the WMA to take readings from piezometers located on the site. See Def.'s Notice of Data Retrieval from Piezometers Located on the Dave Donaldson-Black River Wildlife Management Area and the Barometric Reference Gage (doc. no. 43). Dr. Nutter informed Mr. Williams of the high water levels on the WMA, indicating that "many areas of the WMA were inundated with at least 2.5 feet of water" and "the only way to navigate around the WMA would be by using some type of boat." Ex. B (Williams Decl. ¶ 5).

On May 2, 2007, Defendant informed Plaintiff by letter that its experts, although hoping to take the tree core samples in early May, would have to postpone this work because of the high water levels on the WMA. Ex. C. Defendant indicated that its experts were "hopeful that if we wait a few weeks, sufficient drying will occur such that the tree coring can be performed from solid ground." Id. Consequently, Defendant tentatively rescheduled the tree coring work for the week of May 21, 2007. Id. However, Defendant advised Plaintiff that "if there is additional rainfall, and the ground does not dry out, we will not be able to complete the tree coring by the

current factual discovery deadline of May 31, 2007." Id. If this were to occur, Defendant informed Plaintiff that "we intend to move to extend factual discovery for the tree coring to be completed." Id. By letter dated May 4, 2007, Plaintiff indicated its opposition, stating that it "will object to any further delay in discovery completion resulting from a request to take core samples . . . ." Ex. D.

On May 15, 2007, Roger Chris Hicklin, the Chief of Planning and Environmental Office for the Little Rock District of the United States Corps of Engineers, and Jennifer Dalton, an attorney with the Little Rock District of the United States Corps of Engineers, visited the WMA to observe water levels on the site. Ex. E (Declaration of Roger Chris Hicklin ("Hicklin Decl.") ¶¶ 1, 3). Mr. Hicklin has been a frequent visitor to the WMA over the past three decades, having hunted on the site since 1980, and having worked on projects relating to the site during his 28-year career with the Corps. Id. at ¶ 2. During his May 15, 2007 visit, Mr. Hicklin visited "by truck and foot the following areas on the WMA: the Winchester Greentree Reservoir, Upper Reyno Greentree Reservoir, Lower Reyno Greentree Reservoir, Scha[e]ffer's Eddy Landing, Brookings, and Hubble Bridge." Id. at ¶ 4. These are some of the locations from which Defendant planned to take tree increment core samples. Mr. Hicklin "only viewed the edges of the areas because [he] was not in a boat and the areas were flooded." Id. Mr. Hicklin observed that "[a]ll of the areas that I visited on the WMA were inundated with water." Id. at ¶ 5. In fact, "[t]he only way to navigate throughout the entire WMA in this condition would be by boat." Id. Mr. Hicklin further stated that "[t]he WMA water levels on May 15, 2007 were similar or higher to water levels typical during duck hunting season when Arkansas Game & Fish Commission artificially floods the WMA." Id. Mr. Hicklin took many pictures of the WMA during his visit,

which are attached to his declaration. After visiting the WMA, Mr. Hicklin spoke to Mr. Williams about the conditions on the WMA. Ex. B (Williams Decl. ¶ 6).

Precipitation records from three monitored locations surrounding the WMA – Pocahontas, Arkansas; Corning, Arkansas; and Poplar Bluff, Missouri – indicate that these areas have experienced, collectively, a high level of rainfall since at least January 2007 compared to historical levels. Ex. F (data from the United States Geological Survey ("USGS") compiled by Dr. Nutter). For example, from May 1 through May 22, 2007, the data shows that all three cities have already received, collectively, more rain than is typical for the entire month of May. Id.

Mr. Williams, who, along with this team of professionals, will be taking the tree increment cores on the WMA, believes that "it would not only be difficult, but dangerous, to attempt to take tree increment core samples on the WMA in its current state, that is, when the site is inundated with high levels of water." Ex. B. (Williams Decl. at ¶ 8). As Mr. Williams set forth in his attached declaration:

> For a tree increment core to be extracted from a tree, a forester must vigorously lean into the tree and push on the increment borer (which is the tool used to extract an increment core) to start the borer drilling into the tree. This action is similar to using a hand brace to cut a hole in a board. Pushing very hard against an immovable object (the tree) from within a movable object, such as a boat, is a very difficult task. Thus, for a forester to balance himself or herself in a boat that can move around while boring a tree would be a very unsafe operation to undertake. This is analogous to trying to drill a hole in a wall while standing on a skate board.

Id. To safely collect the tree increment core samples from the WMA, Mr. Williams and his team "would need to wait until sufficient water recedes from the WMA so we can travel through the property by foot[,] and not rely on boats to move between sample locations and collect tree

increment core samples from a boat." Id. at ¶ 9.

## II. ARGUMENT

It is well-settled that "[t]rial courts enjoy broad discretion in controlling discovery." Shell Petroleum, Inc. v. United States, 46 Fed. Cl. 583, 585 (2000) (citing Dorf & Stanton Commc'ns, Inc. v. Molson Breweries, 100 F.3d 919, 922-23 (Fed. Cir. 1996) (applying Second Circuit law), and Western Elec. Co. v. Piezo Tech., Inc., 860 F.2d 428, 430 (Fed. Cir. 1988)).

Allowing Defendant's experts to take the tree increment cores after the water levels on the WMA have receded, which presumably would occur in the next month or so, would not delay this case. Although the Court ordered that fact discovery end on May 31, 2007,[1/] the Court also ruled that "the piezometers shall remain in place throughout the summer of 2007," Arkansas Game & Fish Commission v. United States, 74 Fed. Cl. 426, 434 (2006), and "that expert work and discovery would not begin until after the data from the piezometers was in hand," id. at 433-34. Thus, allowing Defendant's experts to take tree increment cores after the high water levels on the WMA have subsided, which will in all likelihood occur before the piezometers are removed from the WMA at the end of the summer, would not further delay any events in this case.

---

[1/] On October 17, 2006, Defendant filed a motion to compel testing and measuring on the WMA. Defendant argued, in part, that testing and measuring to be conducted by its experts on the WMA (via piezometers) was expert discovery. Plaintiff replied to the motion to compel, contending, in part, that testing and measuring on the WMA conducted by experts was fact discovery. Thereafter, the Court held a hearing to consider the motion to compel. On November 16, 2006, the Court granted Defendant's motion to compel, ordering that Defendant's experts be allowed to enter Plaintiff's property to install the piezometers but determining, inter alia, that testing and measuring on the WMA was fact discovery. Arkansas Game & Fish Commission v. United States, 74 Fed. Cl. 426, 434-35 (2006).

Defendant's experts need to collect and analyze tree increment cores from the WMA. Because there is a lack of complete tree inventory data and other information relating to conditions on the WMA over the last several decades, Defendant's experts need to study tree-ring patterns so that they may determine the growth and stress rates of the trees on the WMA over time. This will help Defendant's experts better understand the causes of the tree damage alleged by Plaintiff.

## III. CONCLUSION

For the foregoing reasons, Defendant respectfully moves the Court to modify the fact discovery schedule to allow for Defendant's experts to take tree increment cores on the WMA once the high water levels on the site have receded and the experts can take the cores from solid ground, or at least until July 31, 2007.

Dated: May 25, 2007

Respectfully submitted,

MATTHEW J. McKEOWN
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

s/ HelenAnne Listerman
HELENANNE LISTERMAN
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044
(202) 305-0239

Of Counsel:

Jennifer Dalton
United States Corps of Engineers
Little Rock District
Office of Counsel